U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

2021 MAR 10  PM 3: 34

CLERK

BY _____ [signature]
DEPUTY CLERK

SARAH WILLIS,                        )
                                     )
            Plaintiff,               )
                                     )
    v.                               )       Case No. 2:20-cv-00004
                                     )
SONNY PERDUE, SECRETARY OF           )
THE DEPARTMENT OF AGRICULTURE        )
AND THE UNITED STATES FOREST         )
SERVICE,                             )
                                     )
            Defendant.               )

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION TO DISMISS**
(Doc. 21)

Plaintiff Sarah Willis brings this action against Sonny Perdue in his official capacity as Secretary of the Department of Agriculture and the United States Forest Service ("Defendant" or "the Agency"), alleging that she was subject to employment discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, and disability discrimination in violation of the Rehabilitation Act of 1973, Section 504 (the "Rehabilitation Act"). Plaintiff asserts claims for (1) "gender discrimination" (Count I); (2) "gender harassment" (Count II); (3) retaliation (Count III); and (4) disability discrimination (Count IV). (Doc. 26-1 at 21-29, ¶¶ 124-185.)

Pending before this court is Defendant's motion to dismiss the Second Amended Complaint (the "SAC") based on Plaintiff's alleged failure to timely exhaust her administrative remedies in Counts I, III, and IV or, in the alternative, for failure to plausibly allege each of her claims. (Doc. 21.)

Plaintiff is represented by James G. Levins III, Esq. Defendant is represented by Assistant United States Attorney Benjamin Weathers-Lowin.

I.      **Procedural Background.**

Plaintiff's initial Complaint was filed on January 2, 2020. On January 17, 2020, Plaintiff filed an Amended Complaint. Defendant moved to dismiss the Amended Complaint on May 27, 2020. Thereafter, on July 24, 2020, Plaintiff opposed Defendant's motion to dismiss and filed a motion for leave to file the SAC. Defendant filed a reply in response to Plaintiff's opposition to his motion to dismiss on August 7, 2020, but did not oppose Plaintiff's request for leave to amend. On September 2, 2020, the court granted Plaintiff leave to amend with Defendant's consent that his motion to dismiss will be decided in context of the SAC.

II.     **The SAC's Allegations.**

Plaintiff's employment with the Agency commenced on December 2, 2013 and consisted of her working in the Rutland Forest Service Office in the Public Affairs section as a Visitor Services Information Assistant. "She was hired as a Schedule A employee which is a person with a disability[,]" and she alleges that "[Ethan] Ready and [John] Sinclair knew of that status." (Doc. 26-1 at 9, ¶ 54.) Mr. Ready, the Public Affairs Officer, interviewed her and played an important role in the hiring decision. In October 2015, Plaintiff was promoted to Public Affairs Specialist, a position that required her to work closely with Mr. Ready, who was her supervisor. Plaintiff's workstation was moved from the front desk to a space near Mr. Ready's office, with a half-wall partition separating them.

In Plaintiff's October 2015 and October 2016 performance evaluations conducted by Mr. Ready, she was "ranked 'Superior'" *Id.* at 7, ¶ 38 and she received a five hundred dollar monetary award for her performance in fiscal years 2014 and 2015 and a seven hundred fifty dollar monetary award for her performance in fiscal year 2016. Plaintiff also received positive reviews from outside vendors.

Plaintiff contends that while working for the Agency, she was "subjected to comments by Mr. Ready about his sex life for more than a year[ ]" and that she tried to "steer away from these comments by using different tactics, including saying things like, 'I don't need to hear this'; or trying to change the subject; or by using rough language."

2

*Id.* at 8, ¶ 43. "Many of the conversations about sex started after Mr. Ready asked [Plaintiff] to come into his office[ ]" and included Mr. Ready's comments that "he was with a girl with small ha[nds] that 'felt good[,]'" and "[h]e asked if he should sleep with a girlfriend or his fiancé." *Id.* at 8, ¶ 44. Plaintiff observed that whenever "an attractive woman [was] in the Forest Service waiting room, Mr. Ready was quick to respond." *Id.* at 8, ¶ 46.

Plaintiff alleges that she became frustrated by Mr. Ready's behavior and asked Mr. Sinclair, the Forest Supervisor, if the Public Service group could meet to discuss Mr. Ready's "poor communication, lack of support for the [f]ront [d]esk, and harassment." *Id.* at 8, ¶ 47. Two of Plaintiff's co-workers, Donna Grosz and Susan Searle, allegedly informed Mr. Sinclair that Mr. Ready's poor communication style and behavior were causing Plaintiff and another Public Affairs employee, Donald Cochrane, "a great deal of stress." (Doc. 26-1 at 9, ¶ 48). At that time, Plaintiff did not tell Mr. Sinclair about "the discussions about sex, but she hoped that this would come up in the meetings and would be properly addressed and stopped." *Id.* at 9, ¶ 49. In May 2017, Plaintiff alleges she "lost confidence that . . . Mr. Ready's repetitive discussion of his sexual life could be introduced and handled properly[ ]" when she overheard Mr. Sinclair and Mr. Ready laughing about another employee, Steven Roy, calling Mr. Ready an "extrovert/pervert." *Id.* at 9, ¶ 52 (internal quotation marks omitted). Plaintiff alleges she is more susceptible to stress as a result of sexual harassment due to her depression and anxiety and claims she underwent counseling and took medication to reduce her stress.

In April 2017, Plaintiff asked Mr. Ready for a new uniform because she had gained weight, to which Mr. Ready allegedly responded, "'[t]hat's ok, because my girlfriend gained weight but it's in the tits and ass, so it's ok.'" *Id.* at 9, ¶ 56. In April and July 2017, Plaintiff alleges that "Mr. Ready placed his hand on the arm of her chair and positioned his face close to hers, and began shaking her saying, 'Come on Sarah, when is the fun going to start?' He was looking at her breasts as he did this." *Id.* at 10, ¶ 57. In June 2017, Mr. Ready allegedly brushed his shoulder against Plaintiff "while making a flirtatious smile[ ]" and "had done this before in the office." *Id.* at 10, ¶ 58. Sometime in

3

August 2017, "while [Plaintiff] was holding tickets, near her stomach, Mr. Ready came close to her and grabbed them brushing against her stomach." (Doc. 26-1 at 10, ¶ 59.)

On August 30, 2017, Plaintiff alleges Mr. Ready took her phone off its receiver and connected her extension to another room where a friend of Mr. Ready's, Jeff Hammell, worked. She asked Mr. Ready whether he had connected her phone to that room and he laughed but did not deny doing so. Plaintiff also asked Mr. Ready if he called Mr. Hammell, to which he responded "No[]"; however, when she asked Mr. Hammell if Mr. Ready had called him, he said "Yes." *Id.* at 10, ¶ 60 (internal quotation marks omitted).

On August 30, 2017, Plaintiff allegedly informed Mr. Sinclair about Mr. Ready's harassment and inappropriate jokes. In turn, Mr. Sinclair reportedly sent this information "through his channels, but did not identify Mr. Ready's conduct as sex harassment." *Id.* at 10, ¶ 63. On September 29, 2017, Plaintiff faxed her first informal complaint to the Agency stating that she experienced sexual harassment and a hostile work environment based on conduct by Mr. Ready. This included a four-page statement and letter from her psychologist who stated Plaintiff was working in a "'hostile work environment' which has caused an acute stress reaction requiring long term and immediate relief." *Id.* at 11, ¶ 65. The four-page statement also noted that on August 31, 2017, Plaintiff signed an application to "[b]ecome a [l]eave [r]ecipient [u]nder the Voluntary Leave Program[.]" (Doc. 26-4 at 5.)

From October 6, 2017 until December 6, 2017, Plaintiff was on medical leave. On October 30, 2017, Plaintiff received a Notice of the Right to file a Formal Complaint for the claims set forth in her September 29, 2017 informal complaint. On November 10, 2017, she filed a formal Equal Employment Opportunity ("EEO") complaint. On December 22, 2017, Plaintiff, through her attorney, sent a letter to Division Chief of Employee Complaints, Attorney Guy Molock, addressing allegations which Plaintiff believed were contained within her formal EEO complaint but which the Agency had not included in its acceptance letter. On January 19, 2018, Attorney Molock responded, stating "[w]e regard these allegations as additional instances of the ongoing harassment

4

claim[,] . . . . there is no need to amend your client's EEO complaint. These and any similar incidents should be presented directly to the investigator for investigation." (Doc. 26-6 at 1.)

On December 6, 2017, when Plaintiff returned to work after her medical leave, she alleges that "it was agreed that [Mr.] Ready would no longer be her supervisor, and he would have no contact with her." (Doc. 26-1 at 12, ¶ 71.) Plaintiff was moved to the front desk, where she worked as a Visitor Service Information Assistant, and Mr. Sinclair served as her supervisor. Mr. Ready's workstation was allegedly moved farther away from her new workstation. From December 2017 until April 2018, Plaintiff worked at the front desk. While she was working in that position, the Agency hired Shireen Yara, and Plaintiff was asked to work with Ms. Yara and to train her.

Plaintiff alleges that during the investigation of her EEO complaint, a former employee of the Rutland Forest Service Office disclosed to the EEO investigator that Mr. Ready had made unwelcome advances toward her and spoke to her about "things that had nothing to do with work." *Id.* at 12, ¶ 72. The former employee further allegedly reported that Mr. Ready obtained her cell phone number and sent her text messages containing pictures of "stacked firewood, a fireplace, and a link to a video called 'African Sexy Mama[.]'" *Id.* The EEO Investigator allegedly told the former employee that the information was not relevant because it was too old. Plaintiff contends these events took place in 2014 and 2015.

Two other women allegedly reported similar interactions with Mr. Ready to the EEO investigator. Lindsay Rae Silvia stated: "He tried to make small talk when I was a new female to the organization; "I got a sense that he wanted to have a lot more interactions than was warranted"; "[H]e has a pattern of doing this with other young females in the organization"; and "I heard he did this to Erin Cole who is now working in Alaska." *Id.* at 12-13, ¶ 74 (internal quotation marks omitted). Vahida Riecker, an employee of the United States Postal Service, was allegedly stalked by Mr. Ready for six weeks in 2016.

Plaintiff alleges that while her claims were being investigated, she was retaliated against by three employees loyal to Mr. Ready. Bonnie Cohen allegedly said to Plaintiff, "[Y]ou are the cause of all these problems." *Id.* at 13, ¶ 78 (internal quotation marks omitted). On March 22, 2018, Plaintiff sent a letter to Attorney Molock alleging retaliation.[1] She alleges that "Attorney Molock did not respond to this letter." *Id.* at 13, ¶ 80.

On April 26, 2018, the Agency issued its final investigation report for Plaintiff's first EEO complaint finding that Plaintiff's claims of sexual harassment and hostile work environment were unsubstantiated. On April 30, 2018, Plaintiff alleges that Mr. Sinclair notified her that she would return to the Public Affairs Specialist position under the supervision of Mr. Ready and that her workstation would once again be next to Mr. Ready's office. Plaintiff allegedly objected to this change and requested "that the agreement that had been reached in December 2017" continue until "the claim was

---

[1] In that letter, Plaintiff noted that several issues had arisen from "the harassment by [Mr.] Ready, [Plaintiff's] charge of harassment, and her reassignment." (Doc. 26-7 at 1.) In the letter Plaintiff listed the following incidents:

> 3/12/18 – Pam Gaiotti came into the break room yelling at [Plaintiff] wagging her finger in [Plaintiff's] face until Pam's face was red and her hair was shaking. Apparently she was upset that [Plaintiff] had called someone in the regional office . . . to gain permission to pay a vendor. [Plaintiff] did this because the method that Pam instructed had previously been identified as being illegal. [Plaintiff] wanted to make sure that she was doing the right thing. Apparently Pam took offense at this and went into a rage.

> . . . 3/19/18 – Donnie Cohen quizzed [Plaintiff] about mail that should have been picked up by the U.S. Postal Service. This was actually a personal letter of Bonnie Cohen[']s. Apparently, Bonnie had wondered why it didn't go out on Friday. [Plaintiff] replied that she was not at work on that Friday, Bonnie then said that the letter had been put in the out box sometime on Thursday. Bonnie then said to [Plaintiff], [Plaintiff] was the "cause of all these problems[.]"[ ]

> . . . Several weeks ago, Jeff Hamill interrogated [Plaintiff] about leaving before lunch and locking the doors. [Plaintiff] left the front desk to attend a counseling session. She has been in counseling due to the harassment for quite a long time now. Pursuant to the agreement, [when Plaintiff] is not at the front desk, a replacement is supposed to be assigned. [Plaintiff] locked the three doors because she did not want to leave the building vulnerable when no one was out front."

*Id.* at 1-2.

finalized by Agency decision, [Equal Employment Opportunity Commission ("EEOC")] Administrative Hearing or Federal Court trial." (Doc. 26-1 at 14, ¶ 83.)

On May 7, 2018, Plaintiff's attorney sent a letter to Attorney Molock in which he noted that Mr. Sinclair advised Plaintiff that she would be moving from the front desk to the office she previously occupied as a Public Affairs Specialist and asserting that this was a violation of the agreement made on December 6, 2017, pursuant to which Plaintiff would have no contact with Mr. Ready. He further noted that although the internal EEO investigation determined on April 26, 2018 that there was "no employment violation, the claim is not over[ ]" because there were several options available to Plaintiff, including filing a complaint in federal court. (Doc. 26-8 at 1.) On May 28, 2018, Plaintiff requested a hearing before an EEOC administrative judge.

In May 2018, Mr. Ready allegedly told Mr. Roy in front of another employee, "You better watch out about what you say, because Donna Grosz will file a complaint against you." (Doc. 26-1 at 14, ¶ 84)[2] (internal quotation marks omitted). On May 7, 2018, Plaintiff informed Attorney Molock that the Agency was retaliating against her by requiring her to continue to work under Mr. Ready's supervision.

On May 21, 2018, Plaintiff's co-worker Brian Austin allegedly had to step between Plaintiff and another co-worker, Derick Yara, because Mr. Yara was yelling at and pointing his finger at Plaintiff "saying, 'Do your job.'" *Id.* at 14, ¶ 86. Mr. Yara was allegedly upset because his wife, Shireen Yara, had to "[c]ome off her lunch to sell a pass[.]" *Id.* (internal quotation marks omitted).

On May 31, 2018, Mr. Sinclair allegedly "refused to advance [Plaintiff's] medical leave after the Agency issued its report[ ]" although he had previously allowed advanced leave. *Id.* at 14, ¶ 89. From June until August 2018, Plaintiff alleges she was unable to work "[d]ue to the stress caused by the retaliation and requirement that [Mr.] Ready be her supervisor[.]" *Id.* at 14, ¶ 90. On June 27, 2018, in response to her May 7, 2018 letter, Plaintiff was informed that she would not need to amend her initial EEO Complaint

---

[2] It is not clear how this statement pertains to Plaintiff's retaliation claim.

"regarding the office's demand that she be supervised by the accused[ ]" because she chose to have a hearing on that complaint and could therefore file a motion to amend her complaint with the EEOC Administrative Judge and "include any like or related issues." *Id.* at 15, ¶ 92 (internal quotation marks omitted).

On August 1, 2018, Neha Hewitt, an Agency Attorney Advisor, informed Plaintiff:

> The Agency cannot change [Plaintiff's] position of record or supervisor in resolution of this complaint. . . . The change of her position was only an interim measure during the management inquiry. . . . Therefore, [Plaintiff] will be returned to her Public Affairs position of record under her supervisor of record, [Mr.] Ready.

(Doc. 26-1 at 15, ¶ 93) (internal quotation marks omitted).

Plaintiff returned to work on August 27, 2018. On the following day, Mr. Sinclair allegedly demanded that she attend a meeting with him and Mr. Ready to discuss Mr. Ready's supervision of her. Sometime after her return to work, Plaintiff was required to leave her workstation at the front desk and, because she could not return to her previous workstation due to its proximity to Mr. Ready's office, she "began reporting to an office that was cramped and used to store things." *Id.* at 28, ¶ 173. On September 6, 2018, Mr. Sinclair reminded Plaintiff that Mr. Ready would be her supervisor and that she would have to report to him. On September 18, 2018, Mr. Ready "placed himself in a hallway within earshot of [Plaintiff] and said to Steve Roy, . . . '[w]hen is the busywork going to end? It would be nice if people would do their job. It's ridiculous, ya know?'" *Id.* at 16, ¶ 98.

On September 19, 2018, Plaintiff learned that forty-eight hours of leave donated by her co-workers had been removed from her leave account. On September 20, 2018, Plaintiff's attorney received an email from Juliet Charity, a Reasonable Accommodation Specialist, which stated that "[t]here is no change of supervisor that is approved. The reasonable accommodation process is not a process that addresses EEO/Harassment claims." *Id.* at 16, ¶ 100 (internal quotation marks omitted).

On September 24 or 25, 2018, Mr. Ready issued Plaintiff a Letter of Warning "stating that she would be terminated from [the Agency] if she did not report to him." *Id.* at 16, ¶ 101. On October 1, 2018, Plaintiff received notification that Mr. Sinclair had declined to approve her pay for "Pay Period 19" and that, "due to the extended duration of [her] medical leave" and the "dates worked outside her official position[,]" she would not receive an annual evaluation. *Id.* at 16, ¶¶ 102-03 (internal quotation marks omitted).

On that same day, Plaintiff filed a second informal complaint with the Agency alleging "issues following her return to work after the Agency found her sexual harassment and hostile work environment claims unsubstantiated." (Doc 26-1 at 17, ¶ 104.) Claims in the second informal complaint included: "requiring [Plaintiff] to meet with [Mr.] Ready to discuss future supervision by Mr. Ready;" "requiring [Plaintiff] to be supervised by [Mr.] Ready;" "[f]ailing to approve Time and Attendance sheets for September, October and November 2018, resulting in no pay;" and "[i]ssuing a Letter of Warning for failure to report to [Mr.] Ready." *Id.* at 17, ¶ 104.

Plaintiff alleges that on October 25, 2018, she "switched her timesheet approver from [Mr.] Sinclair to [Mr.] Ready, after [Mr.] Sinclair rejected her timesheets." *Id.* at 17, ¶ 106. On October 31, 2018, Plaintiff signed an extension agreement which extended the time to issue a report on her second informal EEO complaint until November 20, 2018.

On November 5, 2018, Plaintiff alleges Mr. Ready issued her a Letter of Reprimand "for failing to follow his instructions on September 28, 2018, by submitting her [Time and Attendance] to Donna Grosz instead of him, and on October 1, 2018, by submitting her [Time and Attendance] to [Mr.] Sinclair instead of him, and for failing to submit her Fall Colors Foliage Report by October 10, 2019 as he had instructed, and for failing to report to [him]." *Id.* at 18, ¶ 109.

On November 7, 2018, Plaintiff allegedly told Mr. Sinclair that she was forced to leave the Agency because she was "not getting paid, [and] forced to report to [Mr.] Ready[.]" *Id.* at 18, ¶ 110. She alleges she was without pay from September until November 2018 because she refused to submit her Time and Attendance cards to Mr. Ready. She further alleges that she suggested other personnel, including Andrew Triplett,

GMFL Archaeologist, supervise her and that she also offered to take other open positions in the Rutland Forest Service Office; these requests were denied. Plaintiff alleges she did not have her mental health counselor complete reasonable accommodation forms because Ms. Charity told her that she would not be reassigned to a new supervisor.

On February 20, 2019, the Agency issued its decision on Plaintiff's second informal complaint, which Plaintiff received on February 28, 2019. On April 4, 2019, Plaintiff filed a formal EEO complaint alleging that she was retaliated against by Ms. Cohen, Pam Gaiotti, Mr. Hammell, and Mr. Yara; her request for advanced leave was refused by Mr. Sinclair; she was required to report to Mr. Ready; Mr. Sinclair forced her to communicate with Mr. Ready; she was issued a Letter of Warning by Mr. Ready; Mr. Sinclair advised her that she would not receive an annual review; she received a Letter of Reprimand from Mr. Ready; Mr. Sinclair refused to approve her timecards; and she was constructively discharged.

On May 9, 2019, the Agency accepted and referred for investigation Plaintiff's allegations raised in a May 8, 2019 letter to the Agency including allegations of disability discrimination.[3] On August 30, 2019, Plaintiff filed a motion to consolidate her formal

---

[3] The May 9, 2019 letter states:

> We are accepting and referring for investigation the following allegations:
>
> Whether the Complainant was subjected to discrimination and harassment (sexual and non-sexual), based on **disability (anxiety, stress and depression) and** reprisal . . . when:
>
> 1. on November 16, 2018, she was forced to resign due to ongoing harassment;
>
> 2. on November 5, 2018, a management official issues her a Letter of Reprimand;
>
> 3. between September 16, through November 10, 2018, a management official failed to approve her Time and Attendance (T&A) for pay periods 19 through 22;
>
> 4. on September 20, 2018, a management official denied her request to be reassigned from a supervisor who sexually harassed her to a new supervisor, which forced her to communicate with him regarding her leave and T&A;
>
> 5. on September 19, 2018, she learned forty-eight (48) hours of leave donated to her had been removed;
>
> 6. on August 30, 2018, rather than processing her Reasonable Accommodation request, a management official processed a 'Work at Home Agreement' **and**

EEO complaints before the EEOC Administrative Judge, which was granted on November 8, 2019. On December 4, 2019, the Agency issued its Final Agency Decision with regard to Plaintiff's second formal EEO complaint finding her discrimination, harassment, and retaliation claims unsubstantiated. The Final Agency Decision notified Plaintiff of the right to file a civil action in federal court within thirty days. Plaintiff timely filed a federal court action, alleging "[g]ender [d]iscrimination[,]" "[g]ender [h]arassment[,]" and retaliation. (Doc. 1 at 10-14.)

In the SAC, Plaintiff alleges that this conduct was "part of an ongoing pattern and practice of discrimination, harassment and retaliation based upon gender, which began before and continued into the limitations period[ ]" and the conduct "has been allowed to persist as a result of policies and practices in effect at the [Agency], which has in the past and continues to tolerate and condone discrimination and harassment against women like [Plaintiff] based upon their gender." (Doc. 26-1 at 20-21, ¶ 121.) In the SAC, she adds a disability discrimination claim.

## III.   Conclusions of Law and Analysis.

### A.   Standard of Review.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that

---

**denied her reasonable accommodation request to be reassigned to another supervisor;**

7. on May 31, 2018, a management official denied her request for advanced leave from June 1 through August 27, 2018;

8. on April 30, 2018, a management official reassigned her from her position as a Front Desk Attendant to a Public Affairs Specialist;

9. on several dates, she was subjected to various incidents of harassment (sexual and non-sexual)[.]

(Doc. 26-16 at 1-2) (emphasis in original) (internal footnote omitted).

allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

To determine whether this standard is satisfied, the court employs a "two-pronged approach[.]" *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010) (internal quotation marks omitted) (*quoting Iqbal*, 556 U.S. at 679). First, the court "must accept as true all of the [factual] allegations contained in a complaint" but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory allegations, do not suffice." *Iqbal*, 556 U.S. at 678. Second, the court analyzes whether the complaint's "'well-pleaded factual allegations' . . . 'plausibly give rise to an entitlement to relief.'" *Hayden*, 594 F.3d at 161 (quoting *Iqbal*, 556 U.S. at 679). The court does not "weigh the evidence" or "evaluate the likelihood" that a plaintiff will prevail. *Christiansen v. Omnicom Grp., Inc.*, 852 F.3d 195, 201 (2d Cir. 2017).

## B.   Whether Failure to Exhaust Administrative Remedies Bars Certain Claims.

Defendant contends that Counts I, III, and IV of Plaintiff's Complaint must be dismissed because Plaintiff failed to timely exhaust her administrative remedies. Under Title VII and the Rehabilitation Act, a plaintiff's failure to exhaust administrative remedies "can be asserted by the government as an affirmative defense." *Belgrave v. Pena*, 254 F.3d 384, 386 (2d Cir. 2001).

"An aggrieved person must initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory[.]" 29 C.F.R. § 1614.105(a)(1). This time period will be extended if "the individual shows that he or she was not notified of the time limits and was not otherwise aware of them[.]" 29 C.F.R. § 1614.105(a)(2). If counseling does not resolve the issue, the aggrieved person will receive notice of the right to file a discrimination complaint and must do so "within 15 days of receipt of the notice[.]" 29 C.F.R. §§ 1614.105(d), 1614.106(b). Although "the burden of pleading and proving Title VII exhaustion lies with defendants and operates as an affirmative defense[,]" *Hardaway v. Hartford Pub. Works Dep't*, 879 F.3d 486, 491 (2d Cir. 2018), an "affirmative defense may be raised by a pre-answer motion to dismiss under Rule

12

12(b)(6) . . . if the defense appears on the face of the complaint." *Iowa Pub. Emps.' Ret. Sys. v. MF Glob., Ltd.*, 620 F.3d 137, 145 (2d Cir. 2010). Because Plaintiff's SAC contains an "Exhaustion of Administrative Remedies" section (Doc. 26-1 at 3) and references documents attached to the SAC from the administrative process, consideration of Defendant's administrative exhaustion affirmative defense is proper within the context of his motion to dismiss.

### 1. Whether Counts I, III, and IV are Timely Under the Forty-Five-Day Rule.

Defendant asserts that Plaintiff failed to file her informal EEO complaints within forty-five days of Defendant's alleged misconduct because she was required to report each discrete discriminatory or retaliatory act within that time period. Plaintiff counters that Defendant's discrimination, retaliation, and harassment were part of an "ongoing pattern and practice" and the continuing violation doctrine applies to any time-barred allegation.

> [U]nder the continuing violation doctrine, a plaintiff may bring claims for discriminatory acts that would have been barred by the statute of limitations as long as an act contributing to that [discrimination] took place within the statutory time period. Therefore, a continuing violation may be found where there is proof of specific ongoing discriminatory policies or practices, or where specific and related instances of discrimination are permitted by the [defendant] to continue unremedied for so long as to amount to a discriminatory policy or practice.

*Purcell v. N.Y. Inst. of Tech. – Coll. of Osteopathic Med.*, 931 F.3d 59, 65 (2d Cir. 2019) (quotation marks and footnotes omitted) (alterations in original). When a plaintiff plausibly alleges a continuing violation and "files an EEOC charge that is timely as to any incident of discrimination in furtherance of an ongoing policy of discrimination, all claims of acts of discrimination under that policy will be timely even if they would be untimely standing alone." *Chin v. Port Auth. of N.Y. & N.J.*, 685 F.3d 135, 155-56 (2d Cir. 2012) (quoting *Lambert v. Genesee Hosp.*, 10 F.3d 46, 53 (2d Cir. 1993), *abrogated on other grounds by Kasten v. Saint-Gobain Performance Plastics Corp.*, 563 U.S. 1 (2011)) (internal quotation marks omitted).

The continuing violation doctrine applies "to claims that by their nature accrue only after . . . some threshold amount of mistreatment[,]" and not to "discrete unlawful acts, even where those discrete acts are part of a 'serial violation[.]'" *Gonzalez v. Hasty*, 802 F.3d 212, 220 (2d Cir. 2015) (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114-15 (2002)). "[T]he Supreme Court unanimously rejected the . . . view that a series or pattern of 'related discrete acts' could constitute one continuous 'unlawful employment practice' for purposes of the statute of limitations." *Chin*, 685 F.3d at 156 (quoting *Morgan*, 536 U.S. at 111). A plaintiff "must allege both the existence of an ongoing policy of discrimination and some non-time-barred acts taken in furtherance of that policy." *Harris v. City of N.Y.*, 186 F.3d 243, 250 (2d Cir. 1999).

In support of her gender discrimination claim set forth in Count I, Plaintiff alleges that the following acts took place within the forty-five-day period: Mr. Ready shook her chair while looking at her breasts, brushed against her stomach, and connected her phone line to another room. The remaining acts took place between April and August 2017 with the exception of her allegation that Mr. Ready "talk[ed] to her about sex with women," for which she provides no specific date.[4] (Doc. 26-1 at 21, ¶ 126.)

Defendant asserts that Plaintiff's gender discrimination claim is time-barred because all but one of the enumerated acts took place before the forty-five-day period and because it is implausible that the remaining event took place during the forty-five-day period. A statute of limitations and administrative remedies defense, however, will not generally bar claims unless "factual allegations in the complaint clearly show that the claim is untimely." *St. John's Univ., N.Y. v. Bolton*, 757 F. Supp. 2d 144, 157 (E.D.N.Y. 2010); *see also Langford v. Int'l Union of Operating Eng'rs, Local 30*, 765 F. Supp. 2d 486, 498 (S.D.N.Y. 2011) (holding "numerous courts in this Circuit have held that a Title VII complaint should not be dismissed for failure to plead the dates of the alleged discrimination") (quoting *EEOC v. Elmer W. Davis, Inc.*, 2008 WL 4415177, at *6

---

[4] "Contrary to Defendant['s] position, the fact that Plaintiff has not provided specific dates of the alleged misconduct does not render the Complaint deficient." *Muhammad v. Rabinowitz*, 2012 WL 1155098, at *2 (S.D.N.Y. Apr. 6, 2012).

(W.D.N.Y. Sept. 24, 2008)) (internal quotation marks omitted); *Reyes v. City Coll. of the City Univ. of N.Y.*, 2005 WL 2990637, at *2 (S.D.N.Y. Nov. 8, 2005) ("A plaintiff bringing a Title VII claim is not required to plead specific dates of discrimination.").

Because Plaintiff alleges at least one incident that occurred within the forty-five-day period and further asserts that the alleged discrimination took place for more than one year and was part of a pattern or practice, she plausibly alleges a timely claim of gender discrimination "in furtherance of an ongoing policy of discrimination[.]" *Chin*, 685 F.3d at 155. Defendant's motion to dismiss Plaintiff's gender discrimination claim based on her failure to exhaust her administrative remedies is therefore DENIED.

With regard to Plaintiff's retaliation claim, as set forth in Count III, she alleges the first instance of retaliation occurred in March 2018 and the last instance of retaliation included in her informal EEO complaint occurred on October 1, 2018, the same day she filed that complaint. Her timely allegations include that she was retaliated against because she was required to report to Mr. Ready, forced to communicate with Mr. Ready, issued a Letter of Warning for failing to report to Mr. Ready, told she would not receive an annual review, and did not receive pay for September through November 2018.[5] Plaintiff asserts that retaliation against her was part of an ongoing pattern or practice. Accepted as true, these allegations are sufficient at the pleading stage to state a timely retaliation claim. Defendant's motion to dismiss Count III as time-barred under the forty-five-day rule is therefore DENIED.

In support of her disability discrimination claim in Count IV, Plaintiff alleges her request for reasonable accommodation to change supervisors and to move to a different, open position was denied in August 2018 and continued with Defendant's failure to pay her for four pay periods from September 2018 through November 2018. Because none of the alleged discriminatory acts occurred within forty-five days of Plaintiff raising her disability discrimination claim with the Agency, Defendant's motion to dismiss Count IV under the forty-five-day rule is GRANTED.

---

[5] Plaintiff's allegations of retaliation by her co-workers and Mr. Sinclair's refusal to advance leave were not filed within the forty-five-day period.

## 2. Whether Counts III and IV are Timely Under the Fifteen-Day Rule.

Defendant contends that even if Plaintiff's claims as set forth in Counts III and IV are not barred by the forty-five-day rule, those claims are barred because Plaintiff failed to file a formal EEO complaint within the required fifteen-day period. "[F]iling a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982). "[I]n the absence of a recognized equitable consideration, the court cannot extend the limitations period by even one day." *Johnson v. Al Tech Specialties Steel Corp.*, 731 F.2d 143, 146 (2d Cir. 1984) (quoting *Rice v. New England Coll.*, 676 F.2d 9, 11 (1st Cir. 1982)) (internal quotation marks omitted).

A claim is not time-barred, however, if it "'reasonably relate[s]'" to allegations in a timely complaint. *Fitzgerald v. Henderson*, 251 F.3d 345, 359 (2d Cir. 2001) ("[A]s to a claim not expressly pursued before the administrative agency . . . the court has jurisdiction if that claim is 'reasonably related' to those that the plaintiff did assert before the agency."); *Butts v. City of N.Y. Dep't of Hous. Pres. & Dev.*, 990 F.2d 1397, 1401 (2d Cir. 1993), *superseded by statute on other grounds*, Civil Rights Act of 1991, Pub. L. No. 102-166, 105 Stat. 1072, *as recognized in Duplan v. City of N.Y.*, 888 F.3d 612 (2d Cir. 2018). ("A district court only has jurisdiction to hear Title VII claims that either are included in an EEOC charge or are based on conduct subsequent to the EEOC charge which is 'reasonably related' to that alleged in the EEOC charge."). The Second Circuit has "long recognized that in certain circumstances it may be unfair, inefficient, or contrary to the purposes of the statute to require a party to separately re-exhaust new violations that are 'reasonably related' to the initial claim." *Duplan*, 888 F.3d at 622. The "reasonably related" doctrine has been recognized in three circumstances:

> 1) where "the conduct complained of would fall within the scope of the EEOC investigation"; 2) where the complaint is "one alleging retaliation by an employer against an employee for filing an EEOC charge"; and 3) where

the complaint "alleges further incidents of discrimination carried out in
precisely the same manner alleged in the EEOC charge."

*Terry v. Ashcroft*, 336 F.3d 128, 151 (2d Cir. 2003) (quoting *Butts*, 990 F.2d at 1402-03)
(internal quotation marks omitted).

When applying the "reasonably related" doctrine in the context of retaliation, the
Second Circuit has distinguished between a violation that occurs while investigation is in
progress and one "that occurs after the EEOC investigation is complete[.]" *Duplan*, 888
F.3d at 623. However, "so long as the retaliation at issue occurred after the filing of the
initial EEOC complaint, there [is] 'no reason why a retaliation claim must arise before
administrative proceedings terminate in order to be reasonably related' to the initial claim
for exhaustion purposes." *Id.* (quoting *Malarkey v. Texaco, Inc.*, 983 F.2d 1204, 1209 (2d
Cir. 1993)). The Second Circuit has held that whether "the 'related' retaliation occurred
while a *timely federal lawsuit* based on the underlying discrimination charge was still
pending[ ]" was a "crucial distinction[.]" *Id.* (emphasis in original).

> In sum, retaliation claims arising during or after an EEOC investigation are
> deemed exhausted when a plaintiff seeks to join them to a timely filed
> lawsuit on his [or her] original, exhausted claims, because it would be
> burdensome and wasteful to require a plaintiff to file a new EEOC charge
> instead of simply permitting him [or her] to assert that related claim in
> ongoing proceedings to adjudicate the underlying charge.

*Id.* at 624.

Plaintiff argues that her claims are reasonably related to those in her timely initial
formal complaint and the Agency waived its right to assert that her claims were time-
barred by accepting her complaint and acting on it. Because Plaintiff alleges she was
retaliated against for filing her informal EEO complaint, her retaliation claim is
reasonably related to her gender harassment and gender discrimination claims. *See*
*Duplan*, 888 F.3d at 622 (observing that one rationale for the "reasonably related"
doctrine is that "the ongoing EEOC investigation on the first charge would be expected to
uncover and address any related retaliation"). In addition, Plaintiff advised the Agency,
through Attorney Molock, in a March 22, 2018 letter of several instances of alleged
retaliation. Plaintiff was under no requirement to file a new EEO complaint and re-

exhaust her administrative remedies before joining her retaliation claim with her gender discrimination and gender harassment claims because she notified the Agency of those claims while the first EEO complaint was still pending. In response, the Agency advised her that she could join her claims before an EEOC Administrative Judge, and, after filing a second informal EEO complaint, she did so. Her retaliation claim is therefore not time-barred under the fifteen-day rule.

In contrast, her disability discrimination claim is barred not only by the forty-five-day rule, but also by the fifteen-day rule. Plaintiff first raised her disability discrimination allegations with the Agency in the May 8, 2019 letter. Those allegations are time-barred because they did not "fall within the scope of the EEOC investigation" and the conduct was not "carried out in precisely the same manner alleged in the EEOC charge." *Butts*, 990 F.2d at 1403. Her disability discrimination claim was not reasonably related to her gender discrimination and harassment claims because it purported to set forth an independent claim based on unrelated facts. Even if allegations in the May 8, 2019 letter were within the scope of the second EEO investigation, Plaintiff failed to timely file a formal EEO complaint after receiving notice of her right to do so. Plaintiff's argument that the Agency waived its right to assert the fifteen-day rule by accepting and referring her untimely formal complaint does not alter the outcome because "'agencies do not waive a defense of untimely exhaustion merely by accepting and investigating a discrimination complaint.'" *Belgrave*, 254 F.3d at 387 (quoting *Bowden v. United States*, 106 F.3d 433, 438 (D.C. Cir. 1997)). "[T]o do otherwise . . . would 'vitiate any incentive for [government] agencies to investigate and voluntarily remedy' instances of discrimination, lest the agencies risk forfeiting a valid defense to a potential suit." *Id.* at 387 (quoting *Bruno v. Brady*, 1992 WL 57920, at *3 (E.D. Pa. Mar. 16, 1992)) (second alteration in original) (emphasis omitted).

Plaintiff's equitable tolling arguments fare no better because they are grounded in her assertion that the Agency had notice of her disability discrimination claims within the fifteen-day period and did not, itself, comply with the statutory filing deadlines. "[T]o merit equitable relief, a plaintiff must have acted with reasonable diligence during the

time period she seeks to have tolled." *Chapman v. ChoiceCare Long Island Term Disability Plan*, 288 F.3d 506, 512 (2d Cir. 2002). "[W]ant of diligence by a plaintiff's attorney generally will not prompt a court to provide relief from a limitations period by way of an equitable toll." *Id.* In her SAC, Plaintiff does not allege that she acted with reasonable diligence during the time period she seeks to have tolled and makes no claim of an extraordinary circumstance that prevented her compliance. Equitable tolling therefore does not apply. *See Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005) (holding that "[g]enerally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he [or she] has been pursuing his [or her] rights diligently, and (2) that some extraordinary circumstance stood in his [or her] way").

For the reasons stated above, Defendant's motion to dismiss Plaintiff's retaliation claim for failure to comply with the fifteen-day rule is DENIED. Defendant's motion to dismiss Plaintiff's disability discrimination claim on the same grounds is GRANTED.

### C.    Whether Plaintiff Plausibly Alleges an Adverse Employment Action in Support of her Gender Discrimination Claim.

Even if Plaintiff can overcome procedural hurdles to her claims, Defendant contends her gender discrimination claim must be dismissed because she fails to allege the essential element of an adverse employment action. To assert a gender discrimination claim, a plaintiff must allege:

> (1) that she is a member of a protected class; (2) that she was qualified for employment in the position; (3) that she suffered an adverse employment action; and, in addition, has (4) some minimal evidence suggesting an inference that the employer acted with discriminatory motivation, such a showing will raise a temporary "presumption" of discriminatory motivation[.]

*Littlejohn v. City of N.Y.*, 795 F.3d 297, 307 (2d Cir. 2015). An adverse employment action is "a materially significant disadvantage with respect to terms of [plaintiff's] employment." *Williams v. R.H. Donnelley, Corp.*, 368 F.3d 123, 128 (2d Cir. 2004) (internal quotation marks omitted). To rise to the level of an adverse employment action, it "must be more disruptive than a mere inconvenience or [ ] alteration of job responsibilities[.]" *Fox v. Costco Wholesale Corp.*, 918 F.3d 65, 71 (2d Cir. 2019)

(quoting *Patrolmen's Benevolent Ass'n of City of N.Y. v. City of N.Y.*, 310 F.3d 43, 51 (2d Cir. 2002)) (internal quotation marks omitted). "An adverse employment action may or may not entail economic loss, but there must be a link between the discrimination and some 'tangible job benefits' such as 'compensation, terms, conditions or privileges' of employment." *Alfano v. Costello*, 294 F.3d 365, 373 (2d Cir. 2002) (quoting *Karibian v. Columbia Univ.*, 14 F.3d 773, 778 (2d Cir. 1994)).

In the SAC, Plaintiff alleges she was denied forty-eight hours of donated leave, denied an annual review in 2018 when in the past she had received monetary awards for her performance, issued a Letter of Warning and a Letter of Reprimand, and was not paid from September to November 2018. At least some of these allegations constitute the loss of "tangible job benefits." *Id.* at 373.

Plaintiff further plausibly alleges a causal connection between the discrimination she suffered and the loss of tangible job benefits. *Compare Sanders v. N.Y.C. Human Res. Admin.*, 361 F.3d 749, 755 (2d Cir. 2004) (quoting *Terry*, 336 F.3d at 138) (finding that "'a demotion evidenced by a decrease in wage or salary, a less distinguished title, . . . [or] significantly diminished material responsibilities'" constituted adverse employment actions), *with Fox*, 918 F.3d at 72 (concluding that because "[n]one of [the] reprimands resulted in disciplinary action or a reduction in salary, benefits, or other responsibilities[,]" they were not adverse employment" actions). Accepting Plaintiff's allegations as true, Defendant's motion to dismiss Plaintiff's gender discrimination claim for failure to allege an adverse employment action is DENIED.

## D. Whether Plaintiff Plausibly Alleges a Hostile Work Environment Claim.

Defendant seeks dismissal of Plaintiff's hostile work environment claim because she "has alleged one – or perhaps two – specific remarks" and alleges that conduct "falls woefully short of establishing a workplace that was permeated with discriminatory intimidation, ridicule, and insult[,]" (Doc 21 at 14-15), and because courts in the Second Circuit have dismissed claims for conduct that is "far-more-offensive and/or pervasive." *Id.* at 15.

20

"To establish a hostile work environment under Title VII . . . a plaintiff must show that 'the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Littlejohn*, 795 F.3d at 320-21 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). "This standard has both objective and subjective components: the conduct complained of must be severe or pervasive enough that a reasonable person would find it hostile or abusive, and the victim must subjectively perceive the work environment to be abusive." *Raspardo v. Carlone*, 770 F.3d 97, 114 (2d Cir. 2014).

Among the factors a court must consider are "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with [the] employee's work performance." *Morgan*, 536 U.S. at 116 (internal quotation marks omitted).

> Title VII comes into play before the harassing conduct leads to a nervous breakdown. A discriminatorily abusive work environment, even one that does not seriously affect employees' psychological well-being, can and often will detract from employees' job performance, discourage employees from remaining on the job, or keep them from advancing in their careers. Moreover, even without regard to these tangible effects, the very fact that the discriminatory conduct was so severe or pervasive that it created a work environment abusive to employees because of their race, gender, religion, or national origin offends Title VII's broad rule of workplace equality.

*Harris*, 510 U.S. at 22. Under Title VII, "consideration of the entire scope of a hostile work environment claim, including behavior alleged outside the statutory time period, is permissible for the purposes of assessing liability, so long as an act contributing to that hostile environment takes place within the statutory time period." *Morgan*, 536 U.S. at 105.

"The Second Circuit has 'cautioned against setting the bar too high' for hostile work environment claims." *Farmer v. Shake Shack Enters.*, 473 F. Supp. 3d 309, 335 (S.D.N.Y. 2020) (quoting *Terry*, 336 F.3d at 148). "To survive a motion to dismiss, a plaintiff must allege facts showing she was faced with harassment . . . of such quality or

quantity that a reasonable employee would find the conditions of her employment altered for the worse." *Id.* (quoting *Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007)) (internal quotation marks omitted).

In the SAC, Plaintiff alleges an array of sexual comments made by her direct supervisor and alleges this pattern of conduct was frequent and took place for more than a year. In addition to offensive sexual comments, Plaintiff alleges several instances of unwanted physical contact, which she claims were sexually motivated. "'When entering a workplace, reasonable people expect to have their autonomy circumscribed in a number of ways; but giving up control over who can touch their bod[ies] is usually not one of them.'" *Redd v. N.Y. Div. of Parole*, 678 F.3d 166, 179 (2d Cir. 2012) (quoting *Patton v. Keystone RV Co.*, 455 F.3d 812, 816 (7th Cir. 2006) (alteration in original)). "Direct contact with an intimate body part constitutes one of the most severe forms of sexual harassment[.]" *Id.* at 180.

Although Defendant is correct that harassment "'must be more than episodic; [it] must be sufficiently continuous and concerted in order to be deemed pervasive[,]'" *Raspardo*, 770 F.3d at 114 (quoting *Alfano*, 294 F.3d at 374), Plaintiff's allegations satisfy this standard at the pleading stage. *See Terry*, 336 F.3d at 148 (holding "the fact that the law requires harassment to be severe or pervasive before it can be actionable does not mean that employers are free from liability in all but the most egregious cases") (quoting *Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 70 (2d Cir. 2000) (internal quotation marks omitted).

Viewed in the light most favorable to Plaintiff, the SAC alleges sexual harassment that is "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment[.]" *Harris*, 510 U.S. at 21 (internal quotation marks omitted). Defendant's motion to dismiss Count II pursuant to Fed. R. Civ. P. 12(b)(6) is DENIED.

### E.     Whether Plaintiff Plausibly Alleges Retaliation.

Defendant contends that Plaintiff fails to state a claim for retaliation because she does not allege an adverse employment action but merely a return to the pre-EEO

complaint status quo and because she does not plausibly allege that the retaliatory conduct would not have occurred but for her complaint.

"[F]or a retaliation claim to survive . . . a motion to dismiss, the plaintiff must plausibly allege that: (1) defendants discriminated—or took an adverse employment action—against him [or her], (2) 'because' he [or she] has opposed any unlawful employment practice." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 90 (2d Cir. 2015). An adverse employment action is broad in the context of retaliation and includes any action that "could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006).

"To adequately plead causation, 'the plaintiff must plausibly allege that the retaliation was a 'but-for' cause of the employer's adverse action.'" *Duplan*, 888 F.3d at 625 (quoting *Vega*, 801 F.3d at 90-91). This "does not[, however,] require proof that retaliation was the only cause of the employer's action, but only that the adverse action would not have occurred in the absence of the retaliatory motive." *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 846 (2d Cir. 2013). "Causation may be shown by direct evidence of retaliatory animus or inferred through temporal proximity to the protected activity." *Duplan*, 888 F.3d at 625. "Though there is no bright-line rule on temporal proximity, [the Second Circuit] has held that a one to two month period between the protected activity and adverse employment action is generally sufficient to make a prima facie causation showing." *Rivera v. JP Morgan Chase*, 815 F. App'x 603, 608 (2d Cir. 2020).

Plaintiff alleges that several of her co-workers directed retaliatory comments at her after she filed her complaint. She does not further allege, however, that these same co-workers knew of her complaint and would not have made similar comments in its absence. For each comment made, she identifies at least one non-retaliatory precipitating event. Viewed in the light most favorable to Plaintiff, the comments by her co-workers do not rise to more than a few stray and ambiguous comments that make no reference to her complaint. A retaliation claim based on these comments is thus not plausible.

Plaintiff further alleges retaliation in the form of a return to supervision under Mr. Ready and improper discipline as well as refusal to advance medical leave, denial of an annual evaluation, and improper deductions from her leave account. She contends that she was constructively discharged because she was not paid from September through November of 2018.

Although Defendant argues that Plaintiff's alleged retaliation was a return to the status quo, accepting Plaintiff's allegations as true, she plausibly alleges acts by her supervisors that would dissuade a reasonable worker from making a complaint regarding unlawful activity. *See Davis-Garett v. Urban Outfitters, Inc.*, 921 F.3d 30, 47-48 (2d Cir. 2019) (observing that "an employee would likely be deterred from complaining to the company or to governmental authorities about discrimination by her employer if she knew her complaint would result in [ ] the rescission of a job reassignment offer she had sought and received"); *Krinsky v. Abrams*, 2007 WL 1541369, at *11 (E.D.N.Y. May 25, 2007) ("[A] negative evaluation, or the threat of a negative evaluation, while not an adverse employment action that affects terms and conditions of employment, might dissuade[ ] a reasonable worker from making or supporting a charge of discrimination.") (quoting *White*, 548 U.S. at 68) (internal quotation marks omitted) (second alteration in original).

Causation for purposes of retaliation may also be "inferred through temporal proximity to the protected activity." *Duplan*, 888 F.3d at 625. Although the first alleged act of retaliation occurred in March 2018, roughly five months after Plaintiff filed her informal EEO complaint, because she was on leave for two months of that period, a three-month time lapse exists between her complaint and the alleged retaliation. At the pleading stage, this is sufficient evidence of temporal proximity. *See id.* at 626 (finding temporal proximity despite a lapse of two years based on a "backdrop of continuing antagonism"); *Gorman-Bakos v. Cornell Coop. Extension of Schenectady Cnty.*, 252 F.3d 545, 555 (2d Cir. 2001) (observing that a lapse of four months was "sufficient to support an allegation of a causal connection").

Because Plaintiff plausibly alleges that the Agency retaliated against her for filing a gender discrimination and gender harassment EEO complaint, Defendant's motion to dismiss Plaintiff's retaliation claim on plausibility grounds is DENIED.

**F.      Whether Plaintiff Plausibly Alleges Disability Discrimination Based on a Denial of her Reasonable Accommodation Request.**

Defendant asserts that Plaintiff fails to state a claim for disability discrimination because her request for a reasonable accommodation was presumptively unreasonable and because she failed to engage in the interactive process.

The Second Circuit has held "[b]ecause the [Americans with Disabilities Act ("ADA")] and the Rehabilitation Act are very similar, [courts] may 'look to caselaw interpreting one statute to assist . . . in interpreting the other.'" *Hodges v. Holder*, 547 F. App'x 6, 7 (2d Cir. 2013) (quoting *Francis v. City of Meriden*, 129 F.3d 281, 284 n.4 (2d Cir. 1997)).

> [A] plaintiff makes out a prima facie case of disability discrimination arising from a failure to accommodate by showing each of the following: (1) plaintiff is a person with a disability under the meaning of the ADA; (2) an employer covered by the statute had notice of his [or her] disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations.

*McBride v. BIC Consumer Prods. Mfg. Co.*, 583 F.3d 92, 96-97 (2d Cir. 2009) (quoting *Graves v. Finch Pruyn & Co.,* 457 F.3d 181, 184 (2d Cir. 2006)) (internal quotation marks and alteration omitted). "There is a presumption . . . that a request to change supervisors is unreasonable"; however, a plaintiff may overcome that burden by "identifying an accommodation 'the costs of which, facially, do not clearly exceed its benefits.'" *Kennedy v. Dresser Rand Co.*, 193 F.3d 120, 122-23 (2d Cir. 1999) (quoting *Borkowski v. Valley Cent. Sch. Dist.*, 63 F.3d 131, 139 (2d Cir. 1995)).

Plaintiff not only requested to report to a different supervisor but suggested that she perform other work and offered to take open positions at the Rutland Forest Service Office. Defendant's citation of authority for the proposition that a request for a different supervisor is presumptively unreasonable therefore does not defeat Plaintiff's claim.

As an alternative grounds for dismissal, Defendant argues that Plaintiff abandoned her accommodation request by failing to participate in the interactive process. "The ADA envisions an 'interactive process' by which employers and employees work together to assess whether an employee's disability can be reasonably accommodated." *Jackan v. N.Y.S. Dep't of Labor*, 205 F.3d 562, 566 (2d Cir. 2000). "For employees seeking accommodations, 'the interactive process is mandatory[.]'" *Brumley v. United Parcel Serv., Inc.*, 909 F.3d 834, 840 (6th Cir. 2018) (quoting *Kleiber v. Honda of Am. Mfg., Inc.*, 485 F.3d 862, 871 (6th Cir. 2007)). "[T]he employer must make a reasonable effort to determine the appropriate accommodation. The appropriate reasonable accommodation is best determined through a flexible, interactive process that involves both the employer and the [employee] with a disability." *Goonan v. Fed. Reserve Bank of N.Y.*, 916 F. Supp. 2d 470, 480 (S.D.N.Y. 2013) (quoting 29 C.F.R. pt. 1630, app. § 1630.9) (alteration in original).

> When there is a breakdown in the interactive process:

> courts should look for signs of failure to participate in good faith or failure by one of the parties to make reasonable efforts to help the other party determine what specific accommodations are necessary. A party that obstructs or delays the interactive process is not acting in good faith. A party that fails to communicate, by way of initiation or response, may also be acting in bad faith. In essence, courts should attempt to isolate the cause of the breakdown and then assign responsibility.

*Beck v. Univ. of Wisconsin Bd. of Regents*, 75 F.3d 1130, 1135 (7th Cir. 1996); *see also Nugent v. St. Lukes-Roosevelt Hosp. Ctr.*, 303 Fed. App'x 943, 945-46 (2d. Cir. 2008) (holding that the plaintiff was responsible for the breakdown in the interactive process because she "admitted that she did not follow up or try to bring in . . . an [ADHD] expert" as requested during the reasonable accommodation process). "Where the missing information is of the type that can only be provided by one of the parties, failure to provide the information may be the cause of the breakdown and the party withholding the information may be found to have obstructed the process." *Beck*, 75 F.3d at 1136. This "determination must be made in light of the circumstances surrounding a given case." *Id.*

Plaintiff alleges that she did not have her mental health counselor complete the reasonable accommodation forms requested by the EEO Reasonable Accommodation Specialist because she was told she would not be assigned a different supervisor. However, the Rehabilitation Act does not require an employer to provide the exact accommodation requested. *See, e.g.*, *Wernick v. Fed. Reserve Bank of N.Y.*, 91 F.3d 379, 384-85 (2d Cir. 1996) (finding that "the accommodations offered by the [defendant] were plainly reasonable" even though they were different from the requested accommodations). The purpose behind requiring participation in the interactive process is to determine "whether an employee's disability can be reasonably accommodated[,]" *Jackan*, 205 F.3d at 566, and Plaintiff's failure to participate did not allow Defendant to make this determination. Because a failure to provide information to support an accommodation request is considered a breakdown in the interactive process, this forecloses Plaintiff's disability discrimination claim. *See, e.g.*, *Zito v. Donahoe*, 915 F. Supp. 2d 440, 448 (S.D.N.Y. 2012) ("[Plaintiff's] failure to respond to [employer's] requests [for documentation of Plaintiff's disability] clearly constitutes bad faith participation, if it can be called participation at all, in the interactive process[.]"); *Georgia v. City of Bridgeport*, 2020 WL 4586695, at *17 (D. Conn. Aug. 10, 2020) (holding that "[t]he undisputed record shows that [the d]efendant's attempts to engage the plaintiff to initiate the process of providing an accommodation went substantially unanswered, and the [c]ourt therefore finds that there is no genuine dispute that [the p]laintiff is responsible for the breakdown in the interactive process"). Accordingly, Defendant's motion to dismiss Plaintiff's disability discrimination claim on plausibility grounds provides an alternative ground for dismissing this claim.

## CONCLUSION

For the foregoing reasons, the court GRANTS Defendant's motion to dismiss Count IV, disability discrimination, based on Plaintiff's failure to exhaust her administrative remedies and on plausibility grounds. The court DENIES Defendant's motion to dismiss Counts I, II, and III. (Doc. 21.)

SO ORDERED.

Dated at Burlington, in the District of Vermont, this ___10th___ day of March, 2021.

Christina Reiss, District Judge
United States District Court